UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

DIANA MEY and PHILIP CHARVAT, individually
and on behalf of a class of all persons and
entities similarly situated,

        Plaintiffs,

vs.                                              Case No. 5:18-cv-123-JPB

CHARTER COMMUNICATIONS, INC., and
JOHN DOE 1,

        Defendants.

## FIRST AMENDED CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Diana Mey and Philip Charvat bring this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Ms. Mey alleges that Defendant Charter Communication, Inc., and its "Authorized Retailer," Defendant John Doe 1, sent her automated telemarketing calls promoting Charter's television, internet and voice services without prior express written consent, despite the fact her number has long been listed on the National Do Not Call Registry.

3. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, she sues on behalf of a proposed nationwide class of other persons who received similar calls.

4. Mr. Charvat alleges that Charter sent him telemarketing calls promoting television, internet and voice services without prior express written consent, despite the fact Mr. Charvat's number has long been listed on the National Do Not Call Registry.

5. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

6. Plaintiff Diana Mey resides in this District.

7. Plaintiff Philip Charvat is an Ohio resident.

8. Defendant Charter Communications, Inc. is a Delaware corporation with its corporate headquarters in Stamford, CT. It does business throughout the United States, including in this District.

9. Charter sells television, internet, and voice services to customers through its "Spectrum" brand.

10. Charter sent one of the automated calls at issue in this case to Ms. Mey in this District.

11. Defendant John Doe 1 ("Doe") is a Spectrum Authorized Retailer doing business throughout the United States, including in this District.

12. Its exact identity is unknown, but it operates a website identified as belonging to an entity called "Cablebundlez."

13. Defendant Doe sent one of the automated calls at issue to Ms. Mey in this District.

### Jurisdiction & Venue

14. The Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 et seq.

15. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—namely, the automated calls to the Plaintiff Mey—occurred in this District.

**Statutory Background**

16. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

17. Perhaps the most well-known aspect of the TCPA was the creation of the National Do Not Call Registry. By adding a telephone number to the Registry, a consumer can indicate her desire not to receive telephone solicitations. *See* 47 C.F.R. § 64.1200(c)(2).

18. The TCPA and its implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

19. The TCPA also makes it unlawful to (1) make calls to cellular telephone lines using an "automatic telephone dialing system," or (2) make calls to any cellular or residential line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b)(1)(A) & (B); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012).

20. These calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

21. Because allowing an entity "to avoid potential liability by outsourcing its

telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions," the FCC has consistently held that a corporation or other entity "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

## Factual Allegations

### *Calls from Defendants Charter and Doe to Ms. Mey*

22. On June 7, 2018, Defendant Charter sent a telemarketing call to Ms. Mey's cellular telephone line, (304) 242-XXXX, a number that had been listed on the National Do Not Call Registry for more than 31 days prior to the calls at issue.

23. When the Plaintiff received the call there was no one on the other line until she said "hello."

24. Then, "John," who identified himself as "from Spectrum" used a scripted sales pitch.

25. "Spectrum" is the brand name for Charter's TV, internet, and voice services.

26. These facts indicate that the calls were made with an automatic telephone dialing system as that term is defined in 47 U.S.C. § 227(a)(1).

27. The Caller ID for that call was (888) 438-2427, a Charter number.

28. During the call, Charter attempted to solicit Ms. Mey to purchase their Spectrum services.

29. Ms. Mey did not do so, as she was not interested in changing cable services.

30. Later that day, Defendant Doe made an automated telemarketing call to Ms. Mey's same cellular telephone line, (304) 242-XXXX.

31. After receiving the call, the Plaintiff heard a distinctive "click and pause" sound when she picked up the phone.

32. This sound is consistent with use of a predictive dialer, which is automated dialing equipment subject to the TCPA's restrictions.

33. When Ms. Mey answered the call, she said hello three times, and then the call disconnected.

34. These facts, as well as the scripted nature of the calls, indicate that the calls were made with an automatic telephone dialing system as defined in 47 U.S.C. § 227(a)(1).

35. The call was placed from telephone number 888-229-3116. An entity that identifies itself as "Cablebundlez" lists this telephone number as its number on its website, www.cablebundlez.com.

36. Defendant Doe owns and operates the Cablebundlez website.

37. The website does not reveal the corporate name of the entity that owns and operates it.

38. Other persons have complained about receiving calls from this number.

39. For example, the website No-More-Calls, identifies 17 reports of unwanted contact from this number. *See* http://no-more-calls.com/888-229-3116/.

40. There have also been reports to the FCC regarding unwanted calling activity from (888)-229-3116. *See* https://www.calldetective.net/numbers/888-229-3116/.

41. Ms. Mey gave neither Charter nor Doe consent to call her cellular phone using an auto-dialer.

42. Ms. Mey and others who received these calls were temporarily deprived of legitimate use of their phones, and their privacy was invaded.

43. Before filing suit, Ms. Mey wrote to Charter complaining about the calls, but Charter did not respond.

### *Calls from Defendant Charter to Mr. Charvat*

44. In 2017, Mr. Charvat received multiple calls from entities that identified themselves as associated with Defendant Charter, despite the fact that the calls were received on a telephone line that was listed on the National Do Not Call Registry.

45. On October 18, 2017, the Plaintiff wrote to the Defendant Charter informing them of the calls and stating that he no longer wanted to be contacted and that he should not have been contacted in the first place since he was on the National Do Not Call Registry.

46. Despite this letter, the Plaintiff received another call on May 31, 2018 to his residential telephone line, (614) XXX-8940, a number that had also been listed on the National Do Not Call Registry for more than 31 days prior to the calls at issue.

47. On that call, an individual named "Connor" stated he was calling on behalf of Spectrum and the purpose of the call was to sell the Plaintiff goods and services.

48. On June 1, 2018, the Plaintiff again wrote to Charter informing them of the call, indicating that he did not want to receive any more calls, and that he should not have been contacted in the first place since he was on the National Do Not Call Registry.

49. Despite this letter, on July 10, 2018, Defendant Charter sent a telemarketing call to Mr. Charvat's (614) XXX-8940 number.

50. When the Plaintiff received the call, the caller identified himself as "Mike with Time Warner Cable".

51. "Mike" attempted to sell the Plaintiff the Defendant's goods and services.

52. "Mike" then disconnected the call.

53. On July 20, 2018, Defendant Charter sent a telemarketing call to a residential line of, Mr. Charvat, (614) XXX-8940.

54. When the Plaintiff received the call, the caller identified himself as "Kevin" with "Charter/Spectrum" and attempted to sell him Charter goods and services.

55. On July 23, 2018, Defendant Charter made three telemarketing calls to Mr. Charvat's (614) XXX-1351 telephone line, the same telephone number provided in the two letters that Plaintiff sent to Defendant

56. The first two calls were terminated by the call recipient, but Mr. Charvat spoke with "Frank Fernandez" on the third call.

57. In an effort conclusively identify Defendant, Mr. Charvat expressed interest in the product which resulted in an e-mail confirmation of the call.

58. The e-mail was sent by "Myaccount@spectrumemails.com."

59. Upon information and belief, this e-mail was sent by Defendant.

60. Because Mr. Charvat did not want the service, he sent a cancellation message to Defendant via its website.

61. Despite this cancellation message, Mr. Charvat received a "confirmation call" on July 30, 2018. Mr. Charvat informed the agent, "Craig", that he had already cancelled the order, and that he did not want to receive any more calls.

62. Despite this statement, approximately two hours later, Mr. Charvat received another call on (614) XXX-1351.

63. On this call, an agent "Bill" attempted to sell Mr. Charvat the Defendant's goods and services.

64. "Bill" indicated that he was calling on behalf of the company associated with Defendant's phone number and website.

65. On August 1, 2018 Mr. Charvat was called on (614) XXX-1351 regarding the cancellation. Once again, Mr. Charvat told the caller that he had requested not to be called.

66. On August 6, 2018 Mr. Charvat was called on (614) XXX-1351 by an agent "Luke" who said he was calling as a Charter/Spectrum dealer, offered an $89 deal on services, and identified the website BundlesPackages.com.

67. On August 10, 2018 Mr. Charvat was twice called on (614) XXX-1351 and solicited by agents "Mike" and "Jerry", both of whom offered an $89 deal on services and claimed to be calling as Authorized Spectrum Dealers.

68. Despite Mr. Charvat's repeated statements that he did not wish to receive any more calls, as well as his continued listing on the National Do Not Call registry, Mr. Charvat received another telemarketing call from Charter on September 5, 2018.

69. This call was made to Mr. Charvat's (614) XXX-8940 residential telephone number. During the call, the telemarketing representative for Charter attempted to sell Charter goods and services to Mr. Charvat.

70. Despite Mr. Charvat's repeated statements that he did not wish to receive any more calls, as well as his continued listing on the National Do Not Call registry, Mr. Charvat received another telemarketing call from Charter on September 25, 2018.

71. This call was also made to Mr. Charvat's (614) XXX-8940 residential telephone number.

72. On this call, agent "Bill" attempted to sell Charter goods and services to Mr. Charvat, and told him that the company's website was www.spectrum.com.

73. The address www.spectrum.com is the Defendant's website.

74. "Bill" also gave a phone number corresponding to Charter's customer service number, (833) 694-9259.

*Vicarious Liability*

75. The Federal Communication Commission promulgates rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

76. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

77. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

78. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Charter may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have

9

> thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

79. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

80. Defendant Charter is vicariously liable for the call placed by Defendant Doe to sell Defendant Charter's services.

81. Charter's authorized retailers, including Doe, are obligated by contract to market Charter's products and services using Charter's trademarks and trade name.

82. On its website, Charter tells potential authorized retailers such as Doe, "As a retailing partner, you'll be treated as a respected member of our sales force." *See* https://www.Charter.com/browse/content/retailer-program-details.html (Last Visited July 3, 2018).

83. Charter knowingly accepted business that Defendant Doe obtained through illegal telemarketing calls.

84. Charter allows its dealers, including Defendant Doe, to access its proprietary internal computer systems to sell Charter services.

85. By authorizing Defendant Doe to make calls to sell Charter services, Charter "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

86. As Charter says on its website, "You supply the customers, Spectrum [Charter's brand name for its services] provides everything you need to drive sales." *See* https://www.Spectrum.com/browse/content/retailer-program-details.html (Last Visited July 3, 2018).

87. Charter allows its authorized retailers, including Doe, to hold themselves out to the public as Charter and/or Spectrum.

88. Defendant Doe's "Cablebundlez" website doesn't identify the company's corporate information. It identifies itself with this logo:



*See* http://www.cablebundlez.com/Charter-internet/ (Last Visited July 3, 2018).

89. The website states, "Stuck in a contract? We'll buy it out up to $500, [call] 888 229-3116." *Id.*

90. That promotion is offered by Charter.

91. Charter maintained interim control over Doe's actions with respect to the call.

92. Charter maintained and exercised control in deciding whether it would accept a customer generated through Doe's efforts.

93.     Charter had the ability to prohibit Doe from using an ATDS to contact potential customers, and to require certain measures that would effectively prevent Doe from making illegal calls.

## Class Action Allegations

94.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff sues on behalf of other persons or entities throughout the United States.

95.     The proposed classes are tentatively defined as:

ATDS CLASS:

> All persons within the United States to whom, within the four years prior to the filing of this action, Defendants placed a call on his or her cellular telephone line, using equipment that has the capacity to dial numbers automatically without human intervention, attempting to sell Charter goods or services and where Defendants' records do not indicate prior express consent from the recipient.

DNC CLASS:

> All persons within the United States whose telephone numbers were listed on the Do Not Call Registry, and to whom, at any time within the four years prior to the filing of this action, more than one call within any twelve-month period was placed by or at the direction of Defendants called to promote the sale of Charter products or services.

96.     The Plaintiff Mey is a member of both classes, and the Plaintiff Charvat is a member of the DNC class.

97.     Excluded from the classes are the Defendants, any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

98.     Class members are identifiable through phone records and phone number databases that will be obtained through discovery.

99.     There are many thousands of class members. Individual joinder of these persons is impracticable.

100. There are questions of law and fact common to Plaintiffs and the proposed class, including:

    a. Whether the Defendants used an ATDS to send telemarketing calls;

    b. Whether the Defendants placed telemarketing calls without obtaining the recipients' valid prior express written consent;

    c. Whether the Defendants placed more than one call within a 12-month period to numbers on the Do Not Call Registry;

    d. Whether the Defendants' TCPA violations were negligent, willful, or knowing;

    e. Whether the Plaintiffs and the class members are entitled to statutory damages because of the Defendants' actions; and

    f. Whether Charter is vicariously liable for calls placed by Defendant Doe.

101. Plaintiffs' claims are based on the same facts and legal theories as class members, and therefore are typical of the class members' claims.

102. Plaintiffs are an adequate representative of the classes because their interests do not conflict with the classes' interest, they will fairly and adequately protect the classes' interests, and they are represented by counsel skilled and experienced in litigating TCPA class actions.

103. The Defendants' actions are applicable to the classes and to Plaintiffs.

104. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class

members, which will be ascertainable from records and databases maintained by Defendants and others.

105. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

106. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's provisions
### prohibiting autodialer calls to cell phones

107. The Defendants violated the TCPA by (a) initiating a telephone call using an automated dialing system or prerecorded voice to Plaintiff Mey's telephone number assigned to a cellular telephone service, or (b) by the fact that others caused the initiation of those calls on its behalf. *See* 47 C.F.R. 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1).

108. The Defendants' violations were willful or knowing.

### Count Two:
### Violation of the TCPA's Do Not Call provisions

109. The Defendants violated the TCPA by (a) initiating more than one telephone call to the Plaintiffs in a twelve-month period while Plaintiffs' number was on the National Do Not Call Registry or (b) by the fact that others caused the initiation of those calls on its behalf. *See* 47 U.S.C. § 227(c).

110. The Defendants' violations were willful or knowing.

## Relief Sought

Plaintiffs request the following relief:

    A.    That the Court certify the proposed classes;

    B.    That the Court appoint Plaintiffs as class representatives;

    E.    That the Court appoint the undersigned counsel as counsel for the class;

    F.    That the Court enter a judgment permanently enjoining the Defendants from engaging in or relying upon telemarketing, or, alternatively, from engaging in or relying upon telemarketing that violates the TCPA;

    G.    That, should the Court permit Defendants to engage in or rely on telemarketing, it enter a judgment requiring them to adopt measures to ensure TCPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that the Defendants comply with those measures;

    H.    That the Court enter a judgment awarding any other injunctive relief necessary to ensure the Defendants' compliance with the TCPA;

    I.    That the Court enter a judgment finding that Defendants are jointly and severally liable to Plaintiff and all class members for all violations arising from the calls;

    J.    That Defendants and their agents, or anyone acting on their behalves, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

    K.    That the Court enter a judgment awarding Plaintiffs and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

    L.    That the Court enter an order awarding the Plaintiffs reasonable attorneys' fees and costs; and

M.     That the Plaintiffs and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiffs request a jury trial as to all claims of the Complaint so triable.**

                                    Diana Mey and Philip Charvat
                                    By Counsel,

*/s/John W. Barrett*
John W. Barrett (WV Bar No. 7289)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV  25301
(304) 345-6555
jbarrett@baileyglasser.com

Edward A. Broderick (pro hac vice pending)
Anthony Paronich (pro hac vice pending)
BRODERICK & PARONICH, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone: (617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com

Matthew P. McCue (pro hac vice pending)
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, MA  01760
Telephone: (508) 655-1415
mmccue@massattorneys.net